[Cite as *Darah v. Coaching by Kurt, L.L.C.*, 2016-Ohio-7523.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Sherrie L. Darah, et al.                                   Court of Appeals No. L-16-1071

      Appellants                                 Trial Court No. CI0201404973

v.

Coaching by Kurt, LLC

      Appellee

v.

Michael Yuschak                                    **DECISION AND JUDGMENT**

      Third-Party Defendant                       Decided:  October 28, 2016

* * * * *

D. Lee Johnson, for appellants.

Timothy C. James and Kathleen M. Davis, for appellee.

* * * * *

**YARBROUGH, J.**

{¶ 1} This is an accelerated appeal.  In this premises liability case, appellants,

Sherrie and Louis Darah, appeal the judgment of the Lucas County Court of Common

Pleas granting summary judgment in favor of appellee, Coaching by Kurt, LLC, on the basis that the trip hazard was open and obvious. For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} On March 18, 2014, Sherrie was working out with her personal trainer, Michael Yuschak, at a facility in Maumee, Ohio, operated by appellee. As part of her routine, Sherrie typically warmed up on the treadmill for a few minutes before lifting weights. On that day, she was walking toward the treadmill when her foot caught a "ripple" in the rubber floor, causing her to lose her balance and fall. As she fell, Sherrie hit her left elbow on some weights. Sherrie suffered a fractured left elbow and right wrist, both of which required surgery to repair.

{¶ 3} Thereafter, on December 15, 2014, appellants filed a two-count complaint against appellee. In Count 1, appellants brought a negligence claim, alleging that appellee breached its duty to maintain and operate its premises in a safe manner when it failed to properly repair and maintain the workout mats which caused Sherrie to trip and fall. The second count consisted of a claim for loss of consortium. Appellee filed an answer denying the allegations, and subsequently filed a third-party complaint against Yuschak seeking indemnification or contribution.

{¶ 4} On December 18, 2015, appellee moved for summary judgment arguing, inter alia, that the allegedly improperly installed rubber floor was an open and obvious condition. The trial court agreed, and on March 31, 2016, entered its judgment

2.

dismissing appellants' complaint against appellee, as well as appellee's third-party complaint against Yuschak.

{¶ 5} Appellants have timely appealed, and now assert one assignment of error for our review:[1]

> 1.  The trial court erred by granting summary judgment on the basis of the "open and obvious" doctrine where several issues of material fact are in dispute, and the facts on the record weigh against application of the "open and obvious" doctrine.

## II.  Analysis

{¶ 6} We review the grant of a motion for summary judgment de novo, applying the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989); *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).  Under Civ.R. 56(C), summary judgment is appropriate where (1) no genuine issue as to any material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 7} On a motion for summary judgment, the moving party has the burden of demonstrating that no genuine issue of material fact exists. *Dresher v. Burt*, 75 Ohio

---

[1] Appellee has not cross-appealed the trial court's dismissal of the third-party complaint. Thus, Yuschak is not a party to this appeal.

3.

St.3d 280, 292, 662 N.E.2d 264 (1996). In doing so, the moving party must point to some evidence in the record in the form of "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action." Civ.R. 56(C); *Dresher* at 292-293. The burden then shifts to the nonmoving party to provide evidence showing that a genuine issue of material fact does exist. *Dresher* at 293.

{¶ 8} Appellee argues that it is entitled to summary judgment on appellants' negligence claim because the deposition testimony reveals that it owed no duty to Sherrie to protect her from the defect in the rubber flooring.

{¶ 9} "In order to maintain a negligence action, the plaintiff must show the existence of a duty, a breach of that duty, and that the breach of that duty proximately caused the plaintiff's injury." *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136, ¶ 18.

{¶ 10} "In Ohio, the status of the person who enters upon the land of another (i.e., trespasser, licensee, or invitee) continues to define the scope of the legal duty that the landowner owes the entrant." *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315, 662 N.E.2d 287 (1996). Here, the parties do not dispute that Sherrie was on the premises as an invitee. *See id.* ("Invitees are persons who rightfully come upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner.").

4.

{¶ 11} "A shopkeeper ordinarily owes its business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers." *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 5. However, "[a] shopkeeper is not * * * an insurer of the customer's safety." *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 480 N.E.2d 474 (1985). Thus, a shopkeeper "owes no duty to persons entering those premises regarding dangers that are open and obvious." *Armstrong* at ¶ 5, citing *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968), paragraph one of the syllabus. The underlying rationale is that "the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Id.*, quoting *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644, 597 N.E.2d 504 (1992). "Whether a hazard is open and obvious must be determined on the facts in each case." *Miller v. First Internatl. Fid. & Trust Bldg., Ltd.*, 6th Dist. Lucas No. L-08-1187, 2009-Ohio-6677, ¶ 68. "A hazard is considered to be open and obvious when it is in plain view and readily discoverable upon ordinary inspection." *Id.*

{¶ 12} Here, the sole issue we must address is whether there are any genuine issues of material fact pertaining to whether the "ripple" was an open and obvious hazard. Relative to that determination is the deposition testimony of Sherrie and Amanda Kato, the owner of appellee.

**{¶ 13}** Kato testified that she purchased rubber flooring for the workout studio on the advice of Yuschak. Rather than have the flooring professionally installed, Kato tasked her father with the job. Initially, the flooring was placed on top of preexisting carpet. After a few days, however, Yuschak, Kato, and the patrons noticed that there were "bubbles" or "ripples" in the flooring. Kato and her father then embarked on a series of measures to correct the defect, consulting with the seller of the flooring on at least one occasion. They attempted to nail the flooring down, glue the flooring to the carpet, slice the flooring into smaller pieces, and place gym equipment on the raised portions. Each remedy worked to some effect, but bubbles or ripples would appear in other places. When describing the ripple itself, Kato testified:

Q: [D]id you consider it a dangerous situation?

A: No, because it wasn't to the point where it was horrible, however, it was like - I have my clients run outside and if there's a crack in the sidewalk, I say, be careful, there's a crack, just be -- I just wanted them to be aware.

Q: Like what would you tell them?

A: Be careful, watch your step.

Q: If they wouldn't watch their step, what would you envision happening?

A: They could have tripped.

Q: What would they actually trip on?

6.

A: Probably the bubble.

Q: And how big was the bubble, if you can estimate it, either with a fist, a glass, a coffee cup, a rubber ball, a baseball, a tennis ball?

A: No, it wasn't raised up like that. It was just like a ripple. It wasn't even -- I don't think I could really put an object to it. It was just a rise in the floor.

{¶ 14} For her part, Sherrie testified regarding the circumstances:

Q: Was it well-lit inside, would you say?

A: Yeah, I would say so.

Q: What type of shoes were you wearing?

A: Tennis Shoes.

Q: Were you walking over to get on the treadmill?

A: Yes.

* * *

Q: Where were you looking as you were walking to the treadmill?

A: Well, there's mirrors, that whole wall was mirrors. And all I could think of was I'm going to fall into those mirrors when I started falling. Maybe that's why I turned, I don't know.

Q: Before you actually started to fall and you were walking toward the treadmill, where were you looking?

A: I was looking at [Yuschak] standing in front of the treadmill because I was talking to him.

Q: Were you looking down as you walked?

A: I don't think so.

* * *

Q: Was your view of the rubber mat and the floor unobstructed?

A: I mean, I don't -- it's not like I think about that rubber mat when I go in there.

Q: Right. Well, I guess what I'm really getting at, if you looked down, could you have seen it?

A: Yeah. But when people walk on that mat, the bubbles are in different places, they move.

Q: Was the mat in the same place that it had been before?

A: Yeah.

Q: And was it the rubber mat that caused you to trip?

A: It was the thing my foot got stuck in there when I was walking.

Q: So help me understand this. So was there a ripple --

A: The mat was always -- when other people would walk on it, it would go like this.

Q: Ripple?

A: Yeah.

Q: You're sort of making a rippling --

A: It is, it was like a ripple.

* * *

Q: So as you were walking to the treadmill, if you had looked down, would you have seen the bubble in the mat or the ripple?

A: No.

Q: And why not?

A: Because they weren't like -- you know, they were just enough for my tennis shoe to get stuck in. It wasn't like I could, you know, see this -- no.

{¶ 15} In their brief, appellants first argue that the hazard was both latent and nebulous. Appellants contend that the specific hazard was appellee's failure to properly install the rubber flooring, and the evidence of that failure was hidden under the flooring. We disagree. The specific hazard that Sherrie confronted was a "ripple" or "bubble" in the surface of the flooring. In determining whether that hazard was open and obvious, the underlying cause of the ripple is immaterial. Thus, while the cause of the ripple may have been latent, the ripple itself was not. Therefore, we find appellants' first argument to be without merit.

{¶ 16} Appellants next argue that appellee failed to meet its burden that the hazard was open and obvious, and that a genuine issue of material fact exists over whether the hazard was visible. Specifically, appellants point to Sherrie's testimony that if she would

9.

have looked down, she would not have seen the bubble or ripple. Further, appellants argue that Sherrie's prior knowledge of the hazard is only a factor to be considered by the jury when determining whether the hazard was open and obvious. Appellee, on the other hand, argues that Sherrie's own testimony demonstrates that it was an open and obvious condition, citing her testimony that the facility was well-lit, her view of the floor was unobstructed, she was aware of the existence of the bubbles or ripples, and her statement "well to be honest with you, I thought it was an accident waiting to happen, but I didn't think it was going to happen to me."

{¶ 17} Upon our review of the record, we hold that there are no genuine issues of material fact, and that the ripple was an open and obvious condition. Although Sherrie testified that she would have not seen the ripple if she had looked down, "[establishing] that a claim is barred under the open-and-obvious doctrine does not require proof that the individual plaintiff saw the defect. Rather, it requires proof that the defect was observable." *Czepak v. Heiges*, 2011-Ohio-5523, 968 N.E.2d 1027, ¶ 22 (6th Dist.), citing *Armstrong*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, at ¶ 16. The fact that the ripples or bubbles were well known to everyone at the facility, including Sherrie, leads to the only reasonable conclusion that they were readily discoverable upon ordinary inspection. Furthermore, "a shopkeeper is under no duty to protect business invitees from dangers '*which are known to such invitee* or are so obvious and apparent to such invitee that [she] may reasonably be expected to discover them and protect [herself] against them.'" (Emphasis added.) *Paschal*, 18 Ohio St.3d at 203-204, 480 N.E.2d 474,

10.

quoting *Sidle*, 13 Ohio St.2d 45, 233 N.E.2d 589, at paragraph one of the syllabus. Therefore, because the hazard was an open and obvious condition, appellee owed no duty to protect Sherrie from it.

{¶ 18} Finally, appellants argue that the trial court failed to consider that attendant circumstances may have reduced the visibility of the hazard. "Attendant circumstances may create a genuine issue of material fact as to whether a hazard is open and obvious." *Snyder v. Kings Sleep Shop, LLC*, 6th Dist. Williams No. WM-13-006, 2014-Ohio-1003, ¶ 22, citing *McGuire v. Sears, Roebuck & Co.*, 118 Ohio App.3d 494, 498, 693 N.E.2d 807 (1st Dist.1996).

> An attendant circumstance is a factor that contributes to the fall and is beyond the injured person's control. The phrase refers to all circumstances surrounding the event, such as time and place, the environment or background of the event, and the conditions normally existing that would unreasonably increase the normal risk of a harmful result of the event. An "attendant circumstance" has also been defined to include any distraction that would come to the attention of a pedestrian in the same circumstances and reduce the degree of care an ordinary person would exercise at the time. *Id.*, quoting *Jackson v. Bd. of Pike Cty. Commrs.*, 4th Dist. Pike No. 10CA805, 2010-Ohio-4875, ¶ 21.

{¶ 19} Notably, as pointed out by appellee, appellants did not raise the issue of attendant circumstances in the trial court, and it is axiomatic that "[a] party cannot assert

a new issue or legal theory for the first time on appeal." *Kerger & Hartman, LLC v. Mohamad Ajami*, 2015-Ohio-5157, 54 N.E.3d 682, ¶ 33 (6th Dist.). Moreover, the record contains no evidence of any attendant circumstances in this case. The accident occurred in a well-lit facility, Sherrie and Yuschak were the only people at the facility, and there was no evidence of loud music or flashing lights. Appellants cite a wall of mirrors and Sherrie's conversation with Yuschak as attendant circumstances, but the conversation with Yuschak was within Sherrie's control, and Sherrie testified that she was looking at Yuschak, not the mirrors, when she fell. Therefore, we find no merit to appellants' arguments concerning attendant circumstances.

{¶ 20} Accordingly, because we hold that the ripple in the floor was an open and obvious danger, appellants have failed to establish that appellee owed a duty to Sherrie. As a result, summary judgment in favor of appellee on appellants' claim for negligence is appropriate. Appellants' assignment of error is not well-taken.

### III. Conclusion

{¶ 21} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Arlene Singer, J.                          
                                        _____
                                                    JUDGE
Stephen A. Yarbrough, J.        

                                        _____
James D. Jensen, P.J.                                JUDGE
CONCUR.

                                        _____
                                                    JUDGE