[Cite as *Isbell v. Dollar General*, 2019-Ohio-1560.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Debra Isbell                                          Court of Appeals No. WD-18-078

     Appellant                                Trial Court No. 2017 CV 0410

v.

Dollar General                                      **DECISION AND JUDGMENT**

     Appellee                                 Decided:  April 26, 2019

* * * * *

Scott A. Winckowski, for appellant.

Brittany H. Asmus, for appellee.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an accelerated appeal from a judgment of the Wood County Court of

Common Pleas which granted the motion for summary judgment by the appellee, Dollar

General a/k/a Dolgen Midwest, LLC.  For the reasons set forth below, this court affirms

the judgment of the trial court.

**{¶ 2}** On August 10, 2017, appellant Debra Isbell filed a complaint with jury demand against appellee setting forth claims of negligence towards her, a business invitee. Appellant alleged she suffered physical injuries on or about January 31, 2016, at the Dollar General store in Millbury, Wood County, Ohio, from slipping "on a substance on the floor of the store," a dangerous condition which appellee "concealed and [was] not discernible to her as she walked the store." Appellee generally denied the allegations. Following a period of discovery by the parties, appellee filed a motion for summary judgment, which appellant opposed. On October 1, 2018, the trial court granted appellee's motion. Appellant then filed this appeal setting forth one assignment of error:

> I. Summary judgment in favor of the property owner is reversible error when genuine issues of material fact exist whether a dangerous condition was open and obvious and attendant circumstances preclude judgment.

## 1. Summary Judgment

**{¶ 3}** Appellate review of trial court summary judgment determinations is de novo, employing the same Civ.R. 56 standard as trial courts. *Chalmers v. HCR ManorCare, Inc.*, 6th Dist. Lucas No. L-16-1143, 2017-Ohio-5678, ¶ 21; *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, 936 N.E.2d 481, ¶ 29.

**{¶ 4}** Summary judgment may be granted only

> if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any,

2.

timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law * * * [and] that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 5} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought and identify those portions of the record that affirmatively demonstrate the absence of a genuine issue of material fact—not the reliance on conclusory assertions that non-movant has no evidence to prove its case—regarding an essential element of the non-movant's case. *Beckloff v. Amcor Rigid Plastics USA, LLC*, 6th Dist. Sandusky No. S-16-041, 2017-Ohio-4467, ¶ 14. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact for trial in accordance with Civ.R. 56(E). *Id*. A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Id*.

3.

## 2.  Negligence

{¶ 6} To prove negligence, appellant had the burden to establish:  (1) a duty of care by appellee to appellant, (2) breach of that duty, and (3) injury caused directly and proximately resulting from the breach.  *Krause v. Spartan Stores, Inc.*, 158 Ohio App.3d 304, 2004-Ohio-4365, 815 N.E.2d 696, ¶ 7 (6th Dist.).

{¶ 7} Whether or not a duty exists is a question of law for the court.  *Id.*  There is no formula for whether a duty exists as a matter of law.  *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989).  Appellate review of a question of law is de novo.  *Sanborn v. Hamilton Cty. Budget Comm.*, 142 Ohio St.3d 20, 2014-Ohio-5218, 27 N.E.3d 498, ¶ 39.

## 3.  Business Invitee

{¶ 8} It is undisputed appellant was a business invitee of appellee.  A business invitee is an individual who is "'rightfully on the premises of another for purposes in which the possessor of the premises has a beneficial interest.'"  (Citation omitted.)  *Clark v. BP Oil*, 6th Dist. Lucas No. L-04-1218, 2005-Ohio-1383, ¶ 10.  "A business owner ordinarily owes its invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers." *Id.*

{¶ 9} A business owner is not an insurer of a business invitee's safety and is under no duty to protect a business invitee from dangers known to the invitee "'or are so obvious and apparent to such invitee that he may reasonably be expected to discover [the

4.

dangers] and protect himself against them.'" *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 203-204, 480 N.E.2d 474 (1985), quoting *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968), paragraph one of the syllabus.

### 4. Open-and-Obvious Doctrine

{¶ 10} Because the open-and-obvious doctrine concerns the first element of negligence, whether a duty exists, if the doctrine applies it "obviates the duty to warn and acts as a complete bar to any negligence claims." *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 5, 8. "A hazard is considered to be open and obvious when it is in plain view and readily discoverable upon ordinary inspection." *Miller v. First Internatl. Fid. & Trust Bldg., Ltd.*, 6th Dist. Lucas No. L-08-1187, 2009-Ohio-6677, ¶ 68.

> Courts must consider whether the object or danger itself was observable. Even when an invitee does not actually see the object or danger until after he or she falls, no duty exists when the invitee could have seen the object or danger if he or she had looked. The issue of whether a risk was open and obvious may be decided by the court as a matter of law when only one conclusion can be drawn from the established facts. But, where reasonable minds could reach different conclusions as to the obviousness of the risk, the issue should be resolved by a jury.

*Semprich v. Cty. of Erie*, 6th Dist. Erie No. E-12-070, 2013-Ohio-3561, ¶ 12. "Whether a hazard is an open and obvious condition is a matter of law to be determined by the court

5.

and, therefore, a proper basis for summary judgment." *Hunter v. Hall*, 6th Dist. Lucas No. L-08-1084, 2008-Ohio-4485, ¶ 8.

{¶ 11} Nevertheless, "whether a particular hazard is open and obvious requires an extremely fact-specific inquiry and may * * * involve a genuine issue of material fact for the trier of fact to resolve." *Townsend v. Dollar Gen. Corp.*, 6th Dist. Erie No. E-09-067, 2010-Ohio-6523, ¶ 26. "[A]ttendant circumstances may exist that distract an individual from exercising the degree of care an ordinary person would have exercised to avoid the danger and, thus, 'may create a genuine issue of material fact as to whether a hazard is open and obvious.'" *Id.* at ¶ 23, quoting *Aycock v. Sandy Valley Church of God*, 5th Dist. Tuscarawas No. 2006 AP 09 0054, 2008-Ohio-105, ¶ 26. This court has described attendant circumstances as all the factors both contributing to and reducing the risk of the fall that is beyond the control of the injured party. *Id.* at ¶ 24-25. "While there is no precise definition of attendant circumstances, they generally include any distraction that would come to the attention of an invitee in the same circumstances and reduce the degree of care an ordinary person would exercise at the time." *Hunter* at ¶ 12. Attendant circumstances do not include the injured party's activity at the moment of the fall, unless that person's attention was diverted by an unusual circumstance of the property owner's making and is beyond the control of the injured party. *Caruso v. Erie Shoreline Properties, LLC*, 6th Dist. Ottawa No. OT-17-028, 2018-Ohio-1659, ¶ 15.

{¶ 12} "Whether the invitee was unreasonable in choosing to encounter the danger is not what relieves the property owner of liability; rather, 'it is the fact that the condition

6.

itself is so obvious that it absolves the property owner from taking any further action to protect the [invitee].'" *Miller*, 6th Dist. Lucas No. L-08-1187, 2009-Ohio-6677, at ¶ 67, quoting *Armstrong*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, at ¶13. "The determining factor is whether the condition is or *could have been* seen, if the injured party had looked." (Emphasis sic.) *Leonard v. Modene & Assocs.*, 6th Dist. Wood No. WD-05-085, 2006-Ohio-5471, ¶ 53. "[T]he issue is whether a reasonable person would have seen the danger and not whether a particular plaintiff saw it." *O'Connor v. Kroger Co.*, 6th Dist. Ottawa No. OT-16-020, 2017-Ohio-1077, ¶ 9.

{¶ 13} Where the facts are undisputed, and reasonable minds can come to but one conclusion, the court can determine whether a danger is open and obvious as a matter of law. *Madison v. Raceway Park, Inc.*, 6th Dist. Lucas No. L-08-1279, 2009-Ohio-4068, ¶ 22.

{¶ 14} In support of her assignment of error, appellant argued the trial court erred because whether the substance on the floor was open and obvious to appellant was a genuine issue of material fact. Appellant argued "[t]he store manager was in the best position to see the substance and to either clean it up or warn Appellant of the condition" because the manager was only 10 to 12 feet away from the spill and from her vantage point "should have discovered the spill and thus had a duty to clean or warn of the danger." Appellant further argued as inadequate the store manager's practice of three "periodic checks of the floor * * * over a 12-hour day lacks the requisite review of the floors for a grocery store." Although appellant argued "attendant circumstances preclude

7.

judgment" in her assignment of error, she did not identify any in her brief, other than to state she "was careful in traveling the store." Appellant acknowledged she had "a responsibility to be aware of her surroundings and to protect herself from any known dangerous conditions. * * * However, she did not anticipate nor could she be aware of the spill that existed around the cooler."

{¶ 15} In response, appellee argued the trial court did not err because appellee was entitled to judgment as a matter of law. Appellee argued the hazard upon which appellant fell was white-colored sour cream, noticeably different from the gray floor. Appellee further argued because the store manager testified in the time immediately prior to appellant's fall she "swept" the store and found no hazards, appellee had no notice of the spilled sour cream to take remedial action prior to appellant's fall.

{¶ 16} We conducted a de novo review of the entire record. Appellee pointed to appellant's deposition testimony to support its motion for summary judgment that appellee owed no duty to appellant for the open-and-obvious hazard of sour cream on the floor in front of the coolers. Appellant argued appellee acknowledged she would have seen the sour cream spill had she looked. Appellee pointed to the store manger's deposition as evidence the sour cream spill was not known to appellee prior to appellant's fall.

{¶ 17} Having demonstrated an absence of a genuine issue of material fact in the record regarding the first element of negligence, appellant had the burden to respond with specific facts that there was a genuine issue of material fact for trial. Appellant pointed

8.

to the store manager's deposition testimony that her proximity to the spill raised a genuine issue of material fact if she knew or should have known of the spilled sour cream to clean up. Appellant also pointed to the store manager's deposition testimony that she last checked the area in front of the cooler an hour before appellant fell, a period of time the manager should have discovered and cleaned up the sour cream spill.

{¶ 18} In our de novo review of the record we found the trial court's October 1, 2018 opinion and judgment entry provided an extensive review of the facts and the appropriate law relevant to the issues raised on appeal. The trial court quoted at length from the deposition transcripts of appellant and appellee's store manager. We found the record included excerpts from appellant's May 2, 2018 deposition transcript and the complete August 28, 2018 deposition transcript of the store manager.

{¶ 19} Here, the facts are undisputed appellant was not distracted by an unusual circumstance of the property owner's making. Her decision of where and how to push her shopping cart and where to walk in the store was well within her control. Regardless of whether appellant noticed the spilled sour cream container in front of the cooler, we find she could have seen the spilled container of sour cream if she had looked.

{¶ 20} Appellant was a frequent visitor to that particular Dollar General store. On July 31, 2016, appellant and her sister arrived at the Dollar General around 6:00 p.m. Appellant was in the store only a few minutes before she fell. She was initially pushing an empty shopping cart down an aisle past the coolers, but stopped her cart and walked around it to meet up with her sister, who was coming from the opposite aisle. Appellant

9.

was about an arms-length away from her shopping cart when she fell.  The fall happened quickly, and she recalled one moment walking away from her shopping cart and the next moment being helped up by the store manager.  Appellant's sister did not see her fall, and no one was in the aisle with appellant when she fell.  Appellant learned from the store manager the substance on the floor was sour cream from an open container because the store manager showed her the lid.  The store manager immediately wiped it up and called an ambulance.

{¶ 21} We find appellant did not meet her burden to show there were any attendant circumstances to excuse her activity under the open-and-obvious doctrine.  Appellant testified at her deposition:

Q:  Were there any lights out in the aisle or anything?

A:  No.

Q:  Was there anything in the way of what it was you slipped on when (sic) were you walking?

A:  No.

Q:  Do you remember what you were looking at at the time that you were walking down the aisle and fell?

A:  No.

Q:  You don't remember anything distracting you?

A:  No, just everyday things we'd always talk about; what is that price?  What is this price?  You know, basically nothing out of the ordinary that I can really say, yes, we ere – no, I can't really.

* * *

Q:  If you would have looked down before you slipped in it, would you have been able to see it?

A:  I would have hoped so.  I wouldn't have slipped in it if I would have seen it.  I hope so, but like I said, I was looking – I don't go into stores and look at floors.  I go in and get what I'm going to get, that's what I do.

* * *

Q:  Do you have any reason to believe that the sour cream had been there for longer than a few minutes?

A:  I don't know.  I hadn't been there for that long until I fell on it.  I don't know how long it was there.

Q:  That was the first aisle you went in?

A:  Yes.  Well, towards that area, yeah.

Q:  Do you have any reason to believe that this store knew that it was there?

A:  Do I personally think the store knew?

Q:  Yes.

A:  No, I do not think they knew that.  No.

**{¶ 22}** We find appellee met its burden to show the spilled sour cream was an open-and-obvious danger unknown to appellee prior to the incident. The store manager testified at her deposition she was trained in cleaning up general, chemical and "hazmat" spills. The coolers were checked three times each day for "the temperatures and the area around the coolers." Clean ups also occurred any time an issue is brought to her attention. She saw nothing when she personally viewed the cooler area an hour earlier, and no one brought the sour cream spill to her attention prior to appellant's fall. The store manager knew appellant well, having seen her shop in the store about four times each week. Although the store manager was nearby when appellant fell, the manager was facing away from the coolers and at most saw the movement from her peripheral vision. There were no video cameras in that area of the store to review, and there was no one else in the aisle with appellant, including appellant's sister. The store manager testified at her deposition as follows:

> Q: Do you know if anyone received any notification of this spill –
>
> A: No, sir.
>
> Q: -- prior to Ms. Isbell's fall?
>
> A: No, sir – sorry to interrupt. * * * [B]ecause I did the five o'clock viewing myself. * * * Those are only done by the managers, and I was the manager on duty that evening [July 31, 2016].
>
> * * *

12.

Q: And the fall was approximately six o'clock?

A: Yes, sir.

* * *

Q: Did anyone else ever tell you that they either saw the spill or saw Ms. Isbell fall?

A: No, sir.

Q: Did you see the spill before her fall?

A: No, sir.

Q: Do you know what it was that was actually spilled on the floor?

A: It was sour cream. I learned it after the fact after I was assisting her in getting seated and getting cleaned up. * * * It was on the floor directly in front of the coolers.

* * *

Q: Did you see Ms. Isbell prior to her fall in that general area?

A: Yes, sir.

Q: Where were you just prior to the fall?

A: Ten, 12 feet away stocking the aisle, in the same aisle. * * * She was in line of sight.

* * *

Q: And you were stocking at that time? I assume you weren't paying attention to what she was doing at that time?

A: I was facing the juice, the coolers were behind me, but I could see the motion of them shopping in my peripheral.

Q: Did you see her fall?

A: Yes, I did.

Q: Did you see what happened? Why she fell?

A: Not – I saw as she was falling, I got up to go help her and that's when the sour cream became more evident.

Q: And, again, neither you nor anyone else in the store, employees saw the sour cream prior to her fall on the floor?

A: Correct.

* * *

Q: Did you see anyone in the immediate area at the time of her fall?

A: No.

* * *

Q: There were no other witnesses that you know of to the incident, correct?

A: Correct.

Q: Did her sister say if she saw anything regarding the fall?

A: No, sir. We were more concerned with making sure that she was okay.

* * *

Q: Ms. Pierce, in-between the time you performed the sweep in the aisle where the fall occurred and the time that the fall occurred, do you remember seeing anyone other than Ms. Isbell and her party walk through that area?

A: No.

{¶ 23} It is undisputed the substance on the floor was sour cream. The witnesses testified the sour cream most likely came from the cooler section immediately in front of the spill. The evidence in the record indicates appellant "simply missed seeing a hazard that was clearly visible until after she fell." *Black v. Discount Drug Mart, Inc.*, 6th Dist. Erie No. E-06-044, 2007-Ohio-2027, ¶ 18. We do not find appellant met her burden to create any issues of fact that were both genuine and material to establish any exceptions to the application of the open-and-obvious doctrine. We found no factors contributing to appellant's fall beyond her control that would trigger the exception to the open-and-obvious doctrine. *See Noe v. Keller*, 6th Dist. Lucas No. L-12-1199, 2013-Ohio-2251, ¶ 37.

{¶ 24} The present case is an example of where the evidence is so compelling that reasonable minds can only reach one conclusion that appellee owed no duty to appellant and is entitled to judgment as a matter of law. We find the open-and-obvious doctrine applies to the hazard in this matter and acts as a complete bar to appellant's negligence claim. We reach this decision granting summary judgment to appellee using the

15.

well-established standards under Civ.R. 56.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293-294, 662 N.E.2d 264 (1996).

{¶ 25} On consideration whereof, this court finds that there remain no genuine issues of material fact and, after construing all the evidence most strongly in favor of appellant, appellee is entitled to summary judgment as a matter of law.  The judgment of the Wood County Court of Common Pleas is affirmed.  Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.  *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.              

_____
JUDGE

Christine E. Mayle, P.J.        

_____
JUDGE

Gene A. Zmuda, J.             
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.